UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSEPH FLORES,                          :
                    Plaintiff,          :
                                        :
          v.                            :          CA 11-69 M
                                        :
ASHBEL T. WALL, NANCY BAILEY,           :
JAMES WEEDEN, JEFFREY ACETO,            :
LIEUTENANT ODEN, OFFICER HETO,          :
OFFICER MIDWOOD, and OFFICER            :
MONTECARBRO,                            :
                    Defendants.[1]      :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge


      Before the Court is Defendants' Motion to Dismiss Plaintiff's

Amended Complaint and Defendant Oden's Motion for Summary Judgment

(Docket ("Dkt.") #29) ("Motion to Dismiss and for Summary Judgment"

or "Motion").   The Motion has been referred to me pursuant to 28

U.S.C. § 636(b)(1)(B) for preliminary review, findings, and

recommended disposition.    After listening to oral argument,

reviewing the filings and performing independent research, I

recommend that the Motion be granted in part and denied in part.

---

      [1] The names of the Defendants are spelled in the caption as they
appear in the Amended Complaint (Dkt. #11).   However, based on
Defendants' Memorandum ("Defendants' Mem."), Heto should be "Hetu" and
Montecarbro should be "Montecalvo."   See Defendants' Mem. at 9.
Hereafter, the Court uses the corrected spellings.

# I.    Facts[2]

This is an action brought pursuant to 42 U.S.C. § 1983 by Plaintiff Joseph Flores ("Plaintiff" or "Flores"), a prisoner confined at the Adult Correctional Institutions in Cranston, Rhode Island, for alleged deprivation of rights secured by the Constitution of the United States.  <u>See</u> Amended Complaint (Dkt. #11) at 1-2.[3]  In particular, Flores cites the Eighth Amendment

---

[2] The facts are taken from Plaintiff's Amended Complaint (Dkt. #11) which for purposes of determining the instant Motion are assumed to be true.

[3] Flores's *pro se* Amended Complaint consists of thirty-three pages plus multiple attachments.  However, his page numbering is confusing as Claims II and III each begin with page 1.  Similarly problematic, he has designated multiple documents as "Exhibit A-1".  Therefore, for clarity, the Court has renumbered the pages of the Amended Complaint and has numbered the attachments.  An index of the renumbered pages of the Amended Complaint and the attachments appears below:

Pages

| | |
|---|---|
| 1-3 | Jurisdiction, Venue, and Parties |
| 4-12 | Claim I |
| 13-17 | Claim II |
| 18 | Exhibit A |
| 19-20 | Letter from Flores to DiNitto of 2/27/11 |
| 21 | Letter from DiNitto to Flores of 2/10/11 |
| 22 | Last page of Claim II |
| 23-26 | Claim III |
| 27 | Prayer for Relief |
| 28-32 | Motion for Preliminary Injunction and T.R.O. |
| 33 | Verification and Certificate of Service |

Attachments

| | |
|---|---|
| 1 | Letter from Flores to Martin, M.J., of 3/21/11 |
| 2 | Letter from Flores to Williams of 11/12/10 |
| 3 | Declaration of Julio A. Vasquez |
| 4 | Letter from Flores to Martin, M.J. (undated) |
| 5 | Letter from Flores to Jackson (undated) |

which prohibits cruel and unusual punishment.  <u>See</u> <u>id.</u> at 8, 11.
He seeks compensatory damages, declaratory relief, injunctive
relief, and a temporary restraining order.  <u>See</u> <u>id.</u> at 2, 32.  His
Amended Complaint is prolix, but Flores appears to have two primary
complaints.[4]  First, he alleges that correctional officers,
including a captain and a lieutenant, have spread rumors that he is
a homosexual and a "snitch," <u>id.</u> at 4, from New Mexico and that
these rumors have placed him in danger from other inmates and
resulted in him being assaulted, <u>id.</u>[5]  Second, he alleges that at
9:00 p.m. on September 30, 2010, Lieutenant Oden ("Lt. Oden" or
"Oden") came to his cell, ordered him to stand close to the door,
and reached in and touched Flores's penis and groin area.  <u>Id.</u> at
6-7.

The Amended Complaint contains a host of other allegations of
mistreatment, but the pleading fails to identify in any way the

---

[4] Although the Amended Complaint contains headings, "Claim I,"
"Claim II," and "Claim III," Amended Complaint at 4, 13, 23, the
allegations overlap, and the Court is unable to identify distinct claims
or causes of action which correspond to these headings.  Claim II
consists almost entirely of allegations pertaining to Inspector Steven
Cabral ("Cabral"), <u>id.</u> at 13-22, but he is not a Defendant in this
action.

[5] The Court reads Flores's *pro se* pleading generously with respect
to his claim that he has been assaulted as a result of the rumors.  The
only reference to an assault appears on page 14 of the Amended Complaint,
and it appears in the course of Flores's description of an interview
which he had with Cabral on March 3, 2011.  <u>See</u> Amended Complaint at 13-
14.  During the interview, Flores told Cabral about being "backhanded"
by a person called "Trap" who allegedly stated: "So man I've been told
you['re] a faggot and a bitch of a snitch here from New Mex[ico] not able
to walk the line out there."  Amended Complaint at 14.

persons committing, or responsible for, the acts about which he complains.[6]  Therefore, the Court dispenses with discussion of allegations which are not connected to any named Defendant. Allegations which involve particular Defendants are discussed as part of the Court's consideration of the claims against those individuals.

## II.  *Pro Se* Status

Plaintiff is proceeding *pro se*, and his Amended Complaint is held to a less stringent standard than one drafted by a lawyer.

---

[6] For example, Plaintiff alleges that:

> Since the incidents [in September 2010], Plaintiff has been retaliated against, verbally been threatened, pinching with handcuffs during cuffing him by officers as well as his ankles leaving bruises, pushing and shoving him into walls, putting his face brutally hard into walls while he is fully cuffed, sexually molesting him by grabbing his rearend and penis groin area and trying to kiss him out of camera view while fully cuffed[,] kicking his shoes while he is shackled trying to trip him to fall.
> Spitting in his food and beverages prior to serving him in his viewing, saying to him "enjoy" your special meals from all of us[.]  Officers opening his legal mail prior to receiving it.  This has caused Plaintiff severe psychic harm as he continues to fear officer assault or inmate assaults from the rumors officers purposely spread to other inmates who've physically confronted him and told him there's a "green light" on your life.

Amended Complaint at 7-8.
Nowhere in the Amended Complaint are these allegations connected to any Defendant.  Similarly, Flores repeatedly refers to "prison officials," id. at 8, 10, 11, 12, 19, 25, 26, without identifying who the officials are.  This practice totally disregards the Court's admonition, when it granted Flores leave to file an amended complaint, that he clearly identify each Defendant and plainly state what each Defendant is alleged to have done (or failed to do) and the approximately time period or date(s) that such act or omission occurred.  See Order Granting Second Motion for Leave to File Amended Complaint (Dkt. #10) at 2.

See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972). It is to be "read ... with an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991); see also United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002)("[C]ourts should read pro se complaints less strictly than lawyer-drafted pleadings"). The Court is required to liberally construe a *pro se* complaint. See Strahan v. Coxe, 127 F.3d 155, 158 n.1 (1st Cir. 1997); Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993). At the same time, a plaintiff's *pro se* status does not excuse him from complying with procedural rules. See Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 24 n.4 (1st Cir. 2000).

The First Circuit summarized the above law in Dutil v. Murphy, 550 F.3d 154 (1st Cir. 2008). "[A]s a general rule, we are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Id. at 158 (citing Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)(citing Haines, 404 U.S. at 520; Instituto de Educacion Universal Corp., 209 F.3d at 23)).

## III. **Travel**

On or about February 24, 2011, the Clerk's Office received approximately fifty pages of documents from Flores which he had

submitted for filing.  See Order Directing Clerk to Accept Certain Documents for Filing and to Return Others (Dkt. #1) ("Order of 2/24/11").  Recognizing numerous problems and deficiencies in the proposed filing, the Clerk's Office consulted this Magistrate Judge as to whether the filing should be accepted.  See id. at 1.  After reviewing Flores's documents, this Magistrate Judge issued the Order of 2/24/11 directing the Clerk's Office to accept: (1) a seventeen page document which the Court identified as constituting Flores's complaint, (2) a motion for preliminary injunction and temporary restraining order, and (3) a letter to the clerk.  See Order of 2/24/11 at 2-3.  The remaining documents were ordered returned to Flores.  See id. at 3-4.

In the Order of 2/24/11, the Court noted that it had identified seven persons as defendants because they were "named as such in the thirteen page handwritten attachment to the Complaint filed by Plaintiff ...."[7]  Id. at 1 n.1.  The Court further noted that:

> If Flores wishes to add any additional defendant(s) to this action, he must file an amended complaint which identifies all defendants and clearly states all his claims against each defendant and the basis for such claims.  Such amended complaint must be a complete document in itself, meaning that it is capable of being fully understood without referring to any other document.

Id.

---

[7] The seven were all of the Defendants identified in the caption of this Report and Recommendation except Montecalvo.  See Order of 2/24/11.

On March 11, 2011, Flores filed a Motion for Leave to File an Amended Complaint (Dkt. #7) which the Court granted in a March 14, 2011, text order, see Dkt. Two days later Flores filed a second Motion for Leave to File an Amended Complaint (Dkt. #9) ("Second Motion for Leave") which the Court granted by a written order entered on March 18, 2011. See Order Granting Second Motion for Leave to File an Amended Complaint (Dkt. #10) ("Order of 3/18/11").

The Order of 3/18/11 again alerted Flores to deficiencies in his previous filings and stated in part that:

Plaintiff shall make sure that the Amended Complaint:

1. clearly identifies each defendant; and

2. plainly states what each defendant is alleged to have done (or failed to do) and the approximate time period or date(s) that this occurred.

If Plaintiff has more than one cause of action (i.e., claim), he shall group his causes of action into separate counts (numbered "Count 1," "Count 2," "Count 3," etc.), and he shall make certain that the Amended Complaint plainly states which defendants are named in which count(s). If Plaintiff has only one cause of action against all defendants, the Amended Complaint shall state this.

Order of 3/18/11 at 2 (footnotes omitted).

The instant Amended Complaint was filed on April 4, 2011. See Dkt. As already noted, see supra n.4, n.6, it fails to comply with the Order of 3/18/11 in several respects. On June 20, 2011, Flores filed a Motion for Leave to File an Amended "Supplemental" Complaint (Dkt. #15) which the Court denied without prejudice. See Order Denying without Prejudice Third Motion for Leave to File an

7

Amended Complaint (Dkt. #17) ("Order of 7/5/11").

Defendants answered the Amended Complaint on July 5, 2011, See Dkt., and filed their Motion to Dismiss and for Summary Judgment on March 20, 2012, see id. Telephonic hearings on the Motion were held on April 20 and 30, 2012.[8] See Dkt. Thereafter, it was taken under advisement.

## IV. Discussion

### A. Grounds for Motion

Defendants seeks dismissal of the Amended Complaint on the grounds that (1) Flores has failed to exhaust his administrative remedies and (2) that his pleading fails to state a claim upon which relief can be granted and must be dismissed pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). See Defendants' Memorandum ("Defendants' Mem.") at 3-16.[9] Defendants ask that with respect to Defendant Oden the Motion be treated as one for summary judgment. See id. at 16. The Court discusses each of these grounds below.

### B. Exhaustion of Administrative Remedies

---

[8] At the outset of the April 20, 2012, hearing, Flores stated that he had not received notice of it. See Order Continuing Hearing to April 30, 2012 (Dkt. #37) ("Order of 4/20/12") at 2. Although the docket reflected that notice had been sent to Flores on March 28, 2012, the Court gave him the benefit of the doubt and continued the hearing to April 30, 2012. See id.

[9] The pages of Defendants' Mem. are not numbered, and the Court has performed this task. Defendants' counsel is reminded that District of Rhode Island Local Rule ("DRI LR") Cv 5(a)(3) provides in relevant part: "Where a document is more than one page in length, the pages shall be numbered at the bottom center of each page." DRI LR Cv 5(a)(3).

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that:

> [no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983 (2002). A prisoner must complete any prison administrative process that could provide some sort of relief on his complaint, even if he is only seeking money damages and money cannot be obtained administratively. Booth v. Churner, 532 U.S. 731, 734, 121 S.Ct. 1819 (2001).

A suit filed by a prisoner before administrative remedies have been exhausted must be dismissed. Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002). To properly exhaust administrative remedies, a prisoner must complete the prison grievance procedures. Johnson v. Thyng, 369 Fed. Appx. 144, 147 (1st Cir. 2010)(citing Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910 (2007)).

Defendants argue that in the 2010 time frame outlined in the Amended Complaint, the Rhode Island Department of Corrections ("DOC") had an inmate grievance procedure ("Grievance Policy") in

place.  See Defendants' Mem. at 5 (citing Exhibit ("Ex.") 1 (DOC Policy Number 13.10-1)).[10]  According to the Grievance Policy, all persons in the DOC's custody are eligible to file grievances and grieve areas of institutional life including the "[i]nterpretation and application of policies, rules, and procedures of the facilities and/or Department; ... [i]ndividual employee or inmate actions; ... [p]roperty loss or damage;" and "[a]ny other matter relating to access to privileges, programs, and/or services[,] conditions of care or supervision[,] and living facility conditions within the authority of the RIDOC, except as noted herein."  Id., Ex. 1 at 3-4.

Similar to the grievance policy in Booth, 532 U.S. at 734-35, the Grievance Policy provides for two levels: (1) the inmate must first seek resolution with the warden of the facility that is implicated; and (2) if the inmate is not satisfied at this first level, he/she may appeal to the Director of DOC.  See Defendants' Mem., Ex. 1 at 6-15.  The Grievance Policy expressly states that "[o]nce all extensions have been exhausted, and if the grievant still desires to seek further action, he/she may attempt to have the matter addressed in the court system."  Id. at 14.

Defendants contend that Flores has failed to exhaust his administrative remedies and that the Amended Complaint should,

_____

[10] Policy Number 13.10-1 bears an effective date of "12/03/07." Defendants' Mem., Ex. 1 (DOC Policy Number 13.10-1)

10

therefore, be dismissed.  See Defendants' Mem. at 6.  In support of this contention, Defendants rely upon an affidavit from Robert McCutcheon ("Mr. McCutcheon"), the Grievance Coordinator for the DOC.  See id. (citing Affidavit of Robert McCutcheon ("McCutcheon Aff.")).[11]  In his affidavit, Mr. McCutcheon attests that he is designated by the Director of the DOC to receive and review all grievances at the second and final level.  McCutcheon Aff. ¶ 5.  He further attests that he has "reviewed the files of plaintiff Joseph Flores[] and can state that there is no record of the plaintiff filing any grievances."  Id. ¶ 6.

Flores claims that he tried to use the grievance procedure before filing his lawsuit.  See Amended Complaint at 6.  He states that he went to Defendant Hetu ("Officer Hetu" or "Hetu"), "the law library officer in charge of handing out grievances," id., and asked him in the presence of another officer for a grievance form, id.  Hetu asked why Flores wanted the grievance form.  Id.  When Flores answered that an officer was sexually harassing him, Hetu immediately told Flores that he would not be allowed access to any grievance form and that he needed to "get approval from his block lieutenant ...."  Id.  Flores states that his block lieutenant is Lt. Oden, the officer allegedly sexually harassing him.  Id.

Flores further claims that he filled out a request slip for a

_____

[11] The Affidavit of Robert McCutcheon ("McCutcheon Aff.") is Attachment ("Att.") 5 to Defendants' Mem.

grievance, obtained the signature of Officer House on it, and then approached Lt. Oden for his signature and approval. Amended Complaint at 6. As recounted by Flores, Oden asked him why he should sign and give approval for a grievance. Id. Flores answered that the grievance was "for you sexually harassing me," id., to which Oden immediately responded: "Not [] a chance in hell especially after that remark. Besides I'm the grievance officer here[,] once I received your grievance I would throw it in the trash," id. Flores states that he asked Oden a second time to approve the grievance, and Oden reiterated that he would not. Id. Flores indicates that he responded "okay[,] I want no arguments," id., and tried to walk away, id. He quotes Lt. Oden as saying: "To[o] damn late[,] you fucked up[,] you['re] gonna need to tread lightly." Id.

Flores contends that Hetu and Oden "willfully and purposely abridged Plaintiff's requirement to exhaust his 'available' administrative remedies ...." Id. at 10 (citing Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)("We believe that a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a), and that [plaintiff]'s allegations raise an inference that he was prevented from utilizing the prison's administrative remedies.")). In short, Flores argues that he should be excused from complying with the exhaustion provision of the PLRA because actions by some Defendants have made

it impossible for him to file grievances.

The Court concludes that given Flores's specific claim that he was frustrated by Oden and Hetu in his efforts to obtain grievance forms, Defendants' request for dismissal based on an alleged failure to exhaust administrative remedies should be denied. See Messa v. Goord, 652 F.3d 305, 309 (2nd Cir. 2011)("An inmate's failure to comply with this requirement may be excused where: (1) administrative remedies were not in fact available to the prisoner, (2) defendants' own actions inhibit[ed] exhaustion, or (3) special circumstances ... justify non-exhaustion.")(internal quotation marks omitted); Macias v. Zenk, 495 F.3d 37, 45 (2nd Cir. 2007) (finding that alleged threats directed at prisoner may have rendered administrative procedures unavailable); Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004)(holding that defendant's exhaustion defense is subject to estoppel where prisoner claims he was beaten, threatened, denied grievance forms and writing materials, and transferred to another prison); see also Johnson v. Ford, 261 Fed. Appx. 752, 755 (5th Cir. 2008)("We have recognized, as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy.")(citing Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982)); cf. Zepeda v. Tate, No. CV 1:07-0982-SMM, 2010 WL 4977596, at *2 (E.D. Cal. Dec. 2, 2010)("If the district court looks beyond the pleadings to

a factual record in deciding whether administrative remedies have been exhausted, the court must ensure that the prisoner has fair notice of his opportunity to develop a record."). Accordingly, Defendants' request for dismissal based on Flores's alleged failure to exhaust administrative remedies should be denied. I so recommend.

### C.  Rule 12(b)(6) Standard

"In order to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1ˢᵗ Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007)). This pleading standard applies to all civil actions. Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S.Ct. 1937 (2009).

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Iqbal, 556 U.S. at 663 (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (alteration in original)(quoting Twombly, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. (citing Twombly, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

14

enhancement." Id. (citing Twombly, 550 U.S. at 557).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. (citing Twombly, 550 U.S. at 570); see also Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010)("The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.") (citing Iqbal, 556 U.S. at 678). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Sepúlveda-Villarini, 628 F.3d at 29 (citing Iqbal, 556 U.S. at 678). The plausibility standard is not akin to a "probability requirement," id., but it asks for more than a sheer possibility that a defendant has acted unlawfully, id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).

In Iqbal, the Supreme Court explained that two working principles underlay its decision in Twombly. Id. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Id. Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice.  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).  Thus, although for the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u>  While Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  <u>Id.</u> at 678-79.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  <u>Id.</u> at 679 (citing <u>Twombly</u>, 550 U.S. at 556).  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  <u>Id.</u>  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  <u>Id.</u> (alteration in original)(quoting Fed. R. Civ. P. 8(a)(2)).  At the same time, "<u>Twombly</u> cautioned against thinking of plausibility as a standard of likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor."  <u>Sepúlveda-Villarini</u>, 628 F.3d at 30.

A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth. <u>Iqbal</u>, 556 U.S. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. <u>Id.</u> When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. <u>Id.</u> The <u>Iqbal</u> court cited its analysis in <u>Twombly</u> as illustrative of this "two-pronged approach." <u>Id.</u>

### D. Application of 12(b)(6) Standard

#### 1. Official Capacities

The Amended Complaint states each Defendant is sued individually and in his/her official capacity. <u>See</u> Amended Complaint at 3, 12. To the extent that the Complaint seeks money damages from these Defendants based on acts or omissions in their official capacities, it fails to state a claim upon which relief can be granted. <u>See</u> <u>Nieves-Márquez v. Puerto Rico</u>, 353 F.3d 108, 124 (1st Cir. 2003)("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity.")(citing <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989)); <u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991)("It is settled beyond peradventure ... that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.")(citing <u>Will</u>).

In <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58,
109 S.Ct. 2304 (1989), the Supreme Court addressed "the question
whether a State, or an official of the State while acting in his or
her official capacity, is a 'person' within the meaning of ... 42
U.S.C. § 1983." 491 U.S. at 60. The Court held that "neither a
State nor its officials acting in their official capacities are
'persons' under § 1983." <u>Id.</u> at 71; <u>see also</u> <u>Jones v. Rhode
Island</u>, 724 F.Supp. 25, 28 (D.R.I. 1989)("Based on the Supreme
Court's holding in <u>Will</u>, it is clear that neither the state of
Rhode Island nor any of its officials acting in their official
capacities, are 'persons' that can be held liable under § 1983.").
The <u>Will</u> Court explained that:

> Section 1983 provides a federal forum to remedy many
> deprivations of civil liberties, but it does not provide
> a federal forum for litigants who seek a remedy against
> a State for alleged deprivations of civil liberties. The
> Eleventh Amendment bars such suits unless the State has
> waived its immunity or unless Congress has exercised its
> undoubted power under § 5 of the Fourteenth Amendment to
> override that immunity.

491 U.S. at 66 (internal citation omitted). Regarding state
officials acting in their official capacities, the Supreme Court
stated: "Obviously, state officials literally are persons. But a
suit against a state official in his or her official capacity is
not a suit against the official but rather is a suit against the
official's office. As such, it is no different from a suit against

the State itself."[12]  Id. at 71 (internal citation omitted).  Thus,
Flores's claims for monetary damages against the individual
Defendants in their official capacities are barred.

### 2.  Individual Capacities

#### a.  Director Wall and Assistant Director Bailey

Other than in the caption and the identification of the
parties, see Amended Complaint at 2, Director Wall and Defendant
Nancy Bailey ("Assistant Director Bailey" or "Bailey")[13] are
mentioned by name in the Amended Complaint only once.  The
reference appears immediately after a description of a conversation
which Flores had with Defendant Jeffrey Aceto ("Captain Aceto" or
"Aceto") apparently in September 2010 during which Flores
unsuccessfully sought Aceto's assistance.[14]  See id. at 4.

> Having been even more intimidated by Aceto, with no where
> else to turn he sent letters of notice to both A.T. Wall

---

[12] The Supreme Court further noted that "[o]f course a state official
in his or her official capacity, when sued for injunctive relief, would
be a person under § 1983 because official-capacity actions for
prospective relief are not treated as actions against the State."  Will
v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304
(1989)(internal quotation marks omitted).  However, as will be explained
in a separate Report and Recommendation, Flores has not satisfied the
criteria for injunctive relief.

[13] According to the Rhode Island Department of Corrections website,
Nancy Bailey was the Assistant Director of Institutions & Operations
prior to her retirement in November 2010.  See http://www.doc.ri.gov/
documents/media/2011%20Happenings/March%2021,%202011%20RIDOC%20Happeni
ngs.pdf.

[14] The Court infers that the conversation occurred in September 2010
because the page on which the description of it appears begins with the
words "September 2010," Amended Complaint at 4, and no other date or time
period is mentioned, see id. at 4-6.

and Nancy Bailey Director[] of Prisons for any assistance. Nothing came of the unanswered letters.

Id. at 5.

The First Circuit has instructed that "a court resolving a Rule 12(b)(6) motion to dismiss should begin by separating a complaint's factual allegations from its legal conclusions." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 10 (1st Cir. 2011). Flores's allegation that the letters constituted "notice," Amended Complaint at 5, to Wall and Bailey is a legal conclusion which must be supported by factual allegations. See Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.")(internal quotation marks omitted). The Amended Complaint lacks such factual allegations.

Thus, applying the First Circuit's instruction with respect to Wall and Bailey leaves only the allegation that, at some point in time after having the conversation with Captain Aceto, Flores sent letters to Wall and Bailey "for any assistance," Amended Complaint at 5, and the letters were not answered, id.. There is no description of the content of the letters and no indication of the approximate time they were sent. This bare bones allegation is insufficient to provide fair notice to Wall and Bailey of the claim against them. See Twombly, 550 U.S. at 555 (stating that a plaintiff must "give the defendant fair notice of what the ... claim is and the grounds on which it rests"). It also fails to

"state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; see also id. ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Moreover, the fact that Wall headed the DOC and Bailey was an Assistant Director during the time the acts alleged in the Amended Complaint occurred does not make either of them "liable merely on that account; there is no *respondeat superior* liability under section 1983." Ayala-Rodríguez v. Rullán, 511 F.3d 232, 236 (1st Cir. 2007); see also Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011)("reiterating the principle that government officials may be held liable only 'on the basis of their own acts or omissions,' and not 'for the unconstitutional conduct of their subordinates under a theory of respondeat superior'")(quoting Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009)(quoting Iqbal, 556 U.S. at 676)); id. ("It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions."); Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 41 (1st Cir. 2007)("Section 1983 does not impose purely supervisory liability."); id. (internal quotation marks omitted)(explaining that "Section 1983 ... aims at persons

21

who have actually abused their positions of authority"); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)("Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, he may be found liable under section 1983 on the basis of his own acts or omissions.")(internal citations omitted).

In the context of a section 1983 action, supervisory liability typically arises in one of two ways: either the supervisor may be a "primary violator or direct participant in the rights-violating incident," or liability may attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Sanchez, 590 F.3d at 49 (quoting Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). In the latter instance, the analysis focuses on "whether the supervisor's actions displayed deliberate indifference toward the rights of third parties and has some causal connection to the subsequent tort."[15] Id. (quoting Camilo-Robles, 175 F.3d at 44). In either case, the plaintiff in a section 1983 action must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or

---

[15] Thus, officers "can be held liable for the acts of their subordinates if they engaged in supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference, but that is a demanding standard." Martinez-Vélez, 506 F.3d at 41 n.5 (internal citations and quotation marks omitted).

tacit authorization," id., between the actor and the underlying violation, id.; see also Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011)("[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor ... such that the supervisor's conduct led inexorably to the constitutional violation.")(alterations in original)(internal quotation marks omitted).

Here there is no suggestion that either Wall or Bailey was a primary actor or direct participant in any of the events about which Plaintiff complains. See Amended Complaint. Thus, the first scenario for supervisory liability is not present.

Turning to the second scenario, Flores has not alleged any facts to show that Wall or Bailey supervised, trained, or hired a subordinate with deliberate indifference toward the possibility that deficient performance of any of those tasks eventually contributed to any civil rights violation alleged by Flores. See Sanchez, 590 F.3d at 49; cf. id. at 49-50 (holding that "[t]he deliberate indifference required to establish a supervisory liability/failure to train claim cannot plausibly be inferred from the mere existence of a poorly-implemented strip search or x-ray policy and a bald assertion that surgery somehow resulted from those policies"). Most glaringly, Flores has not alleged any facts

to show "an affirmative link," <u>Feliciano-Hernández</u>, 663 F.3d at 533, between the behavior of a subordinate and the action or inaction of Wall or Bailey such that their conduct led inexorably to the constitutional violation, <u>see</u> <u>id.</u>  Accordingly, Flores's allegations against Wall and Bailey fail to state a plausible claim for relief, and therefore, they should be dismissed from this action for this additional reason.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

    Accordingly, the Motion should be granted as to Wall and Bailey because: 1) the Amended Complaint fails to provide fair notice of the claims against them; 2) it also fails to state a claim against them "that is plausible on its face," <u>Iqbal</u>, 556 U.S. at 678; and 3) there is no respondeat superior liability in a section 1983 action.  I so recommend.

### b.  Warden Weeden

Flores alleges that James Weeden ("Warden Weeden" or "Weeden") is the warden for both the "max-facility and high security," Amended Complaint at 2, and that he is "responsible for the operation of both facilities and for the welfare of all the inmates of both facilities," <u>id.</u>  The remaining allegations against Weeden appear primarily in Claim III.[16]  <u>See</u> <u>id.</u> at 23.  Flores claims that

---

[16] There are two references to James Weeden ("Warden Weeden" or "Weeden") on page 11 in what appears to be part of Claim I of the Amended Complaint.  The Court reproduces both of them below.

he was forcibly transferred on January 5, 2011, from the medical suicide unit at the high security facility to maximum security. Id. at 23. Flores further claims that Weeden "kn[ew] the 'severe' dangerous environment he was plac[ing] Plaintiff back into, disregarded his and officers duty to provide humane conditions of confinement and take reasonable measures to 'guarantee' the safety [of] inmates ...." Id. at 25.

As explained in the previous section, there is no respondeat superior liability under 42 U.S.C. § 1983. See supra Part IV. D. 2. a. at 21-24. The only specific claim against Weeden is that he ordered Flores transferred back to maximum security. After he was transferred, Flores alleges that Captain Aceto "started terrorizing him and threw him into a camera room. Then began his intimidation tactics on him. Flores tried to close the food port door only to have Aceto slam it shut with his foot on Plaintiff's right hand."

---

This as other inmates over hear then threaten Plaintiff with assault and death. This is the result of retaliation from Aceto, Oden, Midwood, Hetu, Montecalvo and Warden Weeden for Plaintiff not doing as told to do, keep his month shut.

....

This deliberately substantiated risk of serious harm to him by Aceto, Oden, Hetu, Midwood, Montecalvo, and Warden Weeden who purposely took Plaintiff out of a safe and guarded facility and had him placed back into the waiting arms of the same threatening inmates out to get him, as well as the same officers who started all the rumors about Plaintiff.

Amended Complaint at 11. The first of these is clearly a conclusory statement that is not entitled "to the presumption of truth." Iqbal, 556 U.S. at 681. The second alleges essentially the same conduct which is alleged in Claim III, and is discussed above.

Amended Complaint at 23. Flores further alleges that he endured Aceto's terrorizing him for seven days, id. at 24, and that the acts of terror included Aceto telling him that if he attempted to hurt himself he would be maced and left naked with burning mace all over his body, id.

In addition, Flores states that on February 11, presumably of 2011,[17] he was placed in the segregation unit of maximum security. Id. Flores describes this unit as being so noisy that he was unable to sleep even while on sleep medication. Id. He asserts that "[t]he noises are 'non-stop,' causing him serious 'c[h]ronic' psychological health injuries, to the point of wanting to hurt himself to make the noises go away." Id. at 25.

Although Flores alleges in conclusory fashion that Warden Weeden knew that he was ordering Flores transferred into a severe and dangerous environment, see id., Flores fails to allege any facts to support this conclusion. Accordingly, the Court is not required to credit this allegation. See Iqbal, 556 U.S. at 686 ("the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual content"); see also Feliciano-Hernández, 663 F.3d at 536 (noting that in Iqbal the Supreme Court deemed bare allegations that former Attorney

---

[17] Flores does not specify a year. See Amended Complaint at 24. The Court infers that the placement occurred in 2011 because the last date mentioned in the Amended Complaint prior to this allegation is "January 5, 2011." Id. at 23.

General and Director of FBI "knew of, condoned, and ... agreed to subject" the plaintiff to harsh conditions of confinement too conclusory to be "entitled to the assumption of truth")(quoting Iqbal, 556 U.S. at 680-81). Merely ordering that Flores be transferred from high security to maximum security does not provide a basis for imposing liability on Warden Weeden. See Cordero-Suárez v. Rodríguez, ___ F.3d ___, 2012 WL 3139581, at *4 (1st Cir. Aug. 3, 2012)("Section 1983 ... aims at persons who have actually abused their positions of authority, and hence only persons who were directly involved in the wrondoing may be held liable."); Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012)("supervisory liability under Section 1983 cannot arise solely on the basis of respondeat superior. Such liability requires that the supervisor's conduct (whether action or inaction) constitutes supervisory encouragement, condonation or acquiescence[,] or gross negligence of the supervisor amounting to deliberate indifference.")(alteration in original)(internal citations and quotation marks omitted). Flores has no constitutional or statutory protected liberty interest in the inmate classification housing procedure. Bishop v. State, 667 A.2d 275, 278-79 (R.I. 1995)("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")

Moreover, "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." Feliciano-Hernández, 663 F.3d at 536 (quoting Feliciano Hernández v. Pereira Castillo, Civ. No. 09-1569, 2010 WL 3372527, at *11 (D.P.R. Aug. 24, 2010)(quoting Moore v. Tartler, 986 F.2d 682, 686 (3rd Cir. 1993)). Here, as in Feliciano-Hernández, the Amended Complaint "contains no factual allegations to support even a minimal showing of deliberate indifference," id., on the part of Warden Weeden. Accordingly, because there is no respondeat superior under Section 1983 and the Amended Complaint fails to state a claim upon which relief can be granted with respect to Weeden, he should be dismissed from the action. I so recommend.[18]

### c. Captain Aceto

---

[18] In also bears noting that Section 1997e(e) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Flores does not allege that he suffered any physical injury as a result of the alleged excessive noise in the segregation unit. See Merchant v. Hawk-Sawyer, 37 Fed. Appx. 143, 145-46 (6th Cir. 2002)(denying inmate's Eighth Amendment claim because the inmate "did not allege that he was subject to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury")(internal quotation marks omitted); see also Norris v. Polk, C/A No. 1:10-236-JFA-SVH, 2011 WL 489967, at *4 (D.S.C. Jan. 7, 2011)("The PLRA of 1996 ... placed an important limitation upon all actions arising from prison conditions, requiring proof of 'physical injury' arising from the allegedly unconstitutional condition."). While Flores claims that he has suffered "loss of weight," Amended Complaint at 26, that is insufficient to satisfy the physical injury component of § 1997e(e). See Shaheed-Muhammad v. DiPaolo, 138 F.Supp.2d 99, 110 n.31 (D. Mass. 2001)(citing cases).

Flores alleges that he told Aceto in September 2010 that he had been confronted physically and threatened by other inmates as a result of rumors which Aceto and other officers had disseminated. See Amended Complaint at 4-5. Flores also alleges that he told Aceto that he was being sexually harassed by Lt. Oden. See id. at 5. According to Flores, Captain Aceto responded by telling Flores that he was "nothing but a pain in my ass," id., that Flores was "in no position for anything around here," id., and that he should "just give them what they want and there won't be a problem for you," id. After telling Flores to "get the fuck away from me you murdering 'faggot,'" id., Aceto allegedly added: "Flores[,] don't even think about going to the warden about this. Think about it and your position, where you are ...," id., and "We can and will make it look like you['re] a problem or even to look as though you took your own life," id.

Thus, Flores alleges that Aceto rebuffed his complaint that Aceto, Oden, Hetu, Midwood, Montecalvo, and the entire security staff were deliberately spreading rumors that Flores was a homosexual and a "snitch" and also rebuffed his complaint that Oden was sexually harassing him, see Amended Complaint at 4-5. Flores further alleges that Aceto threatened him with serious bodily harm and death if he sought help from the warden. Id. at 11. In addition, Flores alleges that on January 5, 2011, after being transferred from the medical suicide unit at high security to

maximum security, Aceto slammed a food port door on his right hand, id. at 23, and told Flores that he was going to make Flores's life "a living hell," id., that Flores's ass belonged to Aceto and that he could do with Flores whatever he wanted, id., and that if Flores attempted to harm himself he would be maced and left naked with burning mace all over his body, id. at 24.

"To state an Eighth Amendment claim, a plaintiff must plead facts which establish both an objective component, that he was forced to endure 'extreme deprivations,' and a subjective component, that the defendant acted with 'deliberate indifference' to such conditions." Gillespie v. Wall, C.A. No. 10-188 S, 2011 WL 3319990, at *3 (D.R.I. Aug. 1, 2011)(citing Hudson v. McMillan, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation. Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)(internal citations omitted). "Thus, courts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8.

Regarding the allegation that Aceto was spreading rumors that Flores was a homosexual and a snitch, the Amended Complaint fails to identify the basis for Flores's belief that Aceto was engaged in

this activity. Although Flores alleges that he was told by "inmates [that] they were shown by prison officers[,] either on computer monitor or print-out[,] Plaintiff's prison file ...," Amended Complaint at 4, he does not explicitly state that the inmates identified any of these prison officers by name, see id. In fact, the only Defendants for which Flores provides any basis for his belief that they were spreading such rumors are Midwood and Montecalvo. Flores states that he "was approached by a willing witness of the rumors beings spread by Officers Midwood and Montecalvo ...." Id. at 22. Reading this allegation generously, the Court infers that the basis for Flores's belief that Midwood and Montecalvo were spreading rumors is that the "witness" told Flores this. However, as to other Defendants whom Flores alleges spread such rumors, the Court finds such allegations to be "conclusory and not entitled to be assumed truth," Iqbal, 556 U.S. at 681. Thus, with respect to these other Defendants (Aceto, Oden, and Hetu), Flores's claim that they were spreading rumors does not have "facial plausibility," id. at 678. Accordingly, Flores has failed to state a claim against Captain Aceto to the extent that the claim is based on Flores's claim that Aceto, Oden, and Hetu were spreading rumors that he was a homosexual and a snitch.

The Court, however, finds that Flores has stated a claim with respect to Aceto's alleged failure to provide assistance with respect to the complaint that Midwood and Montecalvo were spreading

rumors that Flores was a homosexual and a snitch.  See <u>Skinner v.</u>
<u>U.S. Bureau of Prisons</u>, 283 Fed. Appx. 598, 599 (10th Cir. 2008)("'A
prison official's deliberate indifference to a substantial risk of
serious harm to an inmate violates the Eighth Amendment.'  <u>Farmer</u>
<u>v. Brennan</u>, 511 U.S. 825, 828, 114 S.Ct. 1970 ... (1994)(quotation
omitted).  '[L]abeling an inmate a snitch satisfies the <u>Farmer</u>
standard, and constitutes deliberate indifference to the safety of
that inmate.'"); <u>see also</u> <u>Irving v. Dormire</u>, 519 F.3d 441, 451 (8th
Cir. 2008)("At least three other circuits have agreed with
[plaintiff]'s position that labeling an inmate a snitch violates
the guard's duty to protect inmates.").

A prison official's deliberate indifference to a substantial
risk of serious harm to an inmate violates the Eighth Amendment.
<u>Mosher v. Nelson</u>, 589 F.3d 488, 493 (1st Cir. 2009)(citing <u>Farmer</u>
<u>v. Brennan</u>, 511 U.S. 825, 828, 114 S.Ct. 1970 (1994)).  "Courts
have long held that prison officials who identify an inmate as a
'snitch' to other inmates, with intent to provoke an assault or the
fear of assault, demonstrate deliberate indifference to the
inmate's safety and may be liable under the Eighth Amendment."
<u>McPherson v. Beckstrom</u>, Civil Action No. 0:010-00108-HRW, 2011 WL
13649, at *4 (E.D. Ky. Jan. 4, 2011)(citing, among other cases,
<u>Farmer</u>, 511 U.S. at 833; <u>Comstock v. McCrary</u>, 273 F.3d 693, 699 n.2
(6th Cir. 2001)); <u>see also</u> <u>Benefield v. McDowall</u>, 241 F.3d 1267,
1271 (10th Cir. 2001)(noting its own prior holding and stating that

"[o]ther circuits have also recognized that labeling an inmate a snitch has the potential for great harm and may violate the constitutional guarantees"); <u>Edwards v. Dwyer</u>, No. 1:06-CV-1 CAS, 2008 WL 4643946, at *4 (E.D. Mo. Oct. 20, 2008)("The Eighth Circuit has 'recognized that an inmate who is considered to be a snitch is in danger of being assaulted or killed by other inmates.'")(quoting <u>Irving</u>, 519 F.3d at 450).

With respect to the allegation that Aceto failed to take any action regarding Flores's complaint that Oden was sexually harassing him, Flores's claim fails because, at the point Flores sought assistance from Aceto, Oden had only directed unwelcomed comments at Flores.[19]  <u>See</u> Amended Complaint at 4.  Verbal harassment is insufficient to state an Eighth Amendment claim.  <u>See</u> <u>Aleem-x v. Westcott</u>, 347 Fed. Appx. 731, 732 (3rd Cir. 2009) (holding that verbal abuse of prisoner, even of the lewd variety alleged here, is not actionable under § 1983); <u>Johnson v. Dellatifa</u>, 357 F.3d 539, 545 (6th Cir. 2004)(holding that harassment and verbal abuse alleged by plaintiff "do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); <u>Calhoun v. Hargrove</u>, 312 F.3d 730, 734 (5th Cir. 2002)("[prisoner]'s claims of verbal abuse are not actionable under § 1983"); <u>Brand v.</u>

---

[19] It is clear from the Amended Complaint that Flores's conversation with Aceto preceded the incident on September 30, 2010, when Oden allegedly touched Plaintiff's penis and groin area.  <u>See</u> Amended Complaint at 4-7.

Hamilton, No. 3:10cv377/LAC/MD, 2010 WL 4973358, at *4 (N.D. Fla. Oct. 27, 2010)(citing cases); see also Skinner v. Cunningham, 430 F.3d 483, 489 (1st Cir. 2005)(holding that plaintiff's claims of "slamming ... cell door, threats, discourtesies, epithets, and false charges on petty matters" did "not amount to an Eighth Amendment violation, which in the conditions-of-confinement context requires '[e]xtreme deprivations'")(citing Hudson, 503 U.S. at 9)); Roden v. Sowders, 84 Fed. Appx. 611, 613 (6th Cir. 2003)(indicating that even if female correctional officer laughed at and purposely humiliated male plaintiff during strip search such action would not be actionable under § 1983).

Flores has also failed to state a claim upon which relief can granted with respect to his allegations that Aceto threatened him with death if he sought help from the warden, Amended Complaint at 5, that he was going to make Flores's life "a living hell," id. at 23, and that Flores's ass belonged to Aceto and that he could do with Flores whatever he wanted, id., because verbal abuse and threats, without more, are not sufficient to state a constitutional violation under § 1983. See Henslee v. Lewis, 153 Fed. Appx. 175, 180 (4th Cir. 2005); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(holding that sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation under § 1983); Keyes v. City of Albany, 594 F.Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language, no matter how abhorrent

or reprehensible, cannot form the basis for a § 1983 claim."); cf. McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)("threatening words of prison guard, without more, do not invade a federally protected right, but such words do so when a guard 'terrorized ... [prisoner] with threats of death'")(alterations in original)(citing Burton v. Livingston, 791 F.2d 97, 99, 100-01 (8th Cir. 1986)).[20]

As for the allegation that Aceto "threw [Flores] into a camera room," Amended Complaint at 23, and slammed the food port on Flores's hand, id., Flores does not allege that he suffered any injury as a result of these acts. Accordingly, he has failed to state an Eighth Amendment claim. See DeWalt v. Carter, 224 F.3d 607, 620 (7th Cir. 2000)("[W]hile significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of physical force. Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights.")(internal

---

[20] The circumstances in Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986), which the Eighth Circuit cited in McDowell v. Jones, 990 F.2d 433 (8th Cir. 1993), far exceed those alleged here by Flores. Most significantly, they involved a credible threat of instant death:

Sgt. Livingston pointed a lethal weapon at the prisoner, cocked it, and threatened him with instant death. This incident occurred immediately after the prisoner had given testimony against another guard in a § 1983 action. The death threat was accompanied by racial epithets which strongly suggest that the prisoner would have been treated differently had he not been black. Apparently, another guard who was present took the threat seriously enough to step between the prisoner and Sgt. Livingston.

Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986).

citations omitted); <u>see also</u> <u>Hudson</u>, 503 U.S. at 9 ("not ... every malevolent touch by a prison guard gives rise to a federal cause of action"); <u>id.</u> at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.")(internal quotation marks omitted).

In sum, the Amended Complaint fails to state a claim upon which relief can be granted with respect to all claims against Aceto except his alleged failure to take some remedial action in response to Flores's complaint that Midwood and Montecalvo were spreading rumors that he was a homosexual and a snitch. Accordingly, the Motion should be granted as to all other claims against Aceto. I so recommend.

### d. Lt. Oden

The Court has already determined that the allegation that Oden was spreading rumors that Flores is a homosexual and a snitch is conclusory and fails to state a claim which is plausible on its face. <u>See</u> <u>supra</u> Part IV. D. 2. c. at 31. Similarly, Flores's claims against Oden based on words spoken by him or other actions not involving sexual touching fail to state a claim upon which relief may be granted. The only claim against Oden which survives the instant Motion is that based on the allegation that Lt. Oden intentionally touched Flores's penis and groin area under

circumstances which suggest the touching was for the purpose of sexual gratification or assault.  However, Flores does not allege that he suffered any physical injury as a result of the touching. Accordingly, he is precluded from seeking compensatory damages with respect to this claim and may only seek punitive damages, declaratory relief, and injunctive relief.

### e.  Officer Hetu

As was the case with Oden, the Court has already determined that Flores's allegations with respect to Officer Hetu spreading rumors that he is a homosexual and a snitch are conclusory and fail to state a claim which is plausible on its face.  See supra Part IV. D. 2. c. at 31.  Accordingly, Hetu should be dismissed from this action.  I so recommend.

### f.  Officers Midwood and Montecalvo

Because the Court has previously determined that the allegations against Officers Midwood and Montecalvo that they spread rumors that Flores is a homosexual and a snitch have facial plausibility based on Flores's claim that he has a witness that said they engaged in such activity, see id., the Motion should be denied as to his claim.  I so recommend.

### E.  Summary Judgment

#### 1.  Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)).

"[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(alteration in original)(internal quotation marks omitted)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)(citation and internal quotation marks omitted).

## 2. Application of Summary Judgment Standard

Defendants urge the Court to treat Lt. Oden's motion as one for summary judgment. See Defendants' Mem. at 16. They state that "Defendant Oden has submitted an affidavit in support of the instant motion," id. at 15, in which he "swears that not only has he never threatened plaintiff or in any way intimidated him, he

never touched plaintiff in the groin area or in any manner that was inappropriate," id. Defendants provide no citation as to where in the record this affidavit can be found, see id., and the Court fails to find it. Moreover, to the extent that Oden denies touching Flores in an inappropriate manner, this is a disputed issue of material fact.

Defendants also argue that while the Amended Complaint alleges that the incident with Oden occurred at 9:00 p.m. on September 30, 2010, see Amended Complaint at 6, Flores testified at his March 2, 2012, deposition that the correct date was September 29, 2010. See Defendants' Mem. at 15. Flores further testified that he had been in error when he wrote in an October 12, 2010, statement submitted to Deputy Warden Auger that it had occurred on September 24, 2010, see id.; see also id., Ex. 2 (deposition pages 33-35). Defendants state that Oden's affidavit (which as previously noted is not in the present record) indicates that he was on duty on September 29, 2010, but left duty at 3:00 p.m. and was not present in the facility thereafter. See Defendants' Mem. at 16. Defendants also cite an affidavit from Colleen Beltrami, keeper of departmental payroll records, which states that according to those records Oden worked the 7:00 a.m. to 3:00 p.m. shift and did not work any overtime on this date. See id., Att.3 (Affidavit of Colleen Beltrami) ¶¶ 2,3.

Flores objects to the use of his deposition, see Plaintiff's

Motion for the Complete Dismissal, Disqualification of Deposition of Plaintiff (Dkt. #32), but the motion for summary judgment should be denied even if the deposition is considered because it is clear that whether Oden touched Flores as alleged is a disputed issue of material fact. Even if Defendants had provided the missing affidavit from Oden, this would not allow the Court to choose to believe Oden's affidavit over Flores's testimony. Accordingly, to the extent that Defendants seek summary judgment with respect to Flores's claim that Oden inappropriately touched his penis and groin area, the Motion should be denied because this is a disputed issue of material fact. I so recommend.

## V. Summary

For the reasons set forth above, I find that the Amended Complaint fails to state a claim upon which relief can be granted as to Wall, Bailey, Weeden, and Hetu. Accordingly, they should be dismissed from this action. I further find that the Amended Complaint fails to state a claim upon which relief can be granted as to all claims against:

(1) Aceto except the one based on his alleged failure to provide assistance with respect to Flores's complaint that Midwood and Montecalvo were spreading rumors that Flores was a homosexual and a snitch;

(2) Oden except the one based on his alleged touching of

Flores's penis and groin;[21]

(3) Midwood and Montecalvo except the one based on Flores's allegation that they spread rumors that he was a homosexual and a snitch.

## VI. Conclusion

For the reasons stated above, I recommend that the Motion be granted as to all Defendants and all claims except those against Aceto, Oden, Midwood, and Montecalvo which are identified immediately above in the Summary. See supra Part V. at 41-42. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
August 31, 2012

---

[21] As previously stated, because Flores has not alleged that he suffered any physical injury from this alleged touching, he may not recover compensatory damages for it. See supra Part IV. D. 2. d. at 37.