```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND


JOSEPH FLORES,                        :
            Plaintiff,                :
                                      :
       v.                             :        CA 11-69 M
                                      :
ASHBEL T. WALL, NANCY BAILEY,         :
JAMES WEEDEN, JEFFREY ACETO,          :
LIEUTENANT ODEN, OFFICER HETO,        :
OFFICER MIDWOOD, and OFFICER          :
MONTECARBRO,¹                         :
            Defendants.               :
```

### REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Before the Court are three motions:

    1.    Plaintiff's Motion for Permanent Injunction and Extension of Pretrial Deadlines (Docket ("Dkt.") #24) ("First Motion for Injunction" or "First Motion");²

---

¹ The names of the Defendants are spelled in the caption as they appear in the Amended Complaint (Dkt. #11). However, based on Defendants' Memorandum in support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Defendant Oden's Motion for Summary Judgment (Dkt. #29) ("Defendants' Dismissal Mem."), Heto should be "Hetu" and Montecarbro should be "Montecalvo." See Defendants' Dismissal Mem. at 9. Hereafter, the Court uses the corrected spellings.

² Plaintiff's Motion for Permanent Injunction and Extension of Pretrial Deadlines (Dkt. #24) ("First Motion for Injunction" or "First Motion") is in the form of a letter to this Magistrate Judge from Plaintiff dated December 6, 2011. In deference to Plaintiff's *pro se* status, the Court treated the letter as a motion for a permanent injunction and a motion to extend pretrial deadlines. See Order for Defendants to File a Response (Dkt. #23) ("Order of 1/17/12") at 2.
Regarding the latter relief, the Court stated that it treated the letter as seeking an extension of all deadlines "by three months and one day." Order of 1/17/12 at 2 n.3. Thus, granting the requested extension

      2.    Plaintiff's Motion for an Injunction (Dkt. #31) ("Second Motion for Injunction" or "Second Motion"); and

      3.    Plaintiff's Motion for Permanent Injunction (Dkt. #39) ("Third Motion for Injunction" or "Third Motion").

The Court refers collectively to these motions as the "Motions for Injunction" or "Motions." The Motions have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for preliminary review, findings, and recommended disposition. After reviewing the filings and performing independent research, I recommend that the Motions be denied except to the extent that the First Motion seeks an extension of pretrial deadlines.

## I. Facts[3]

### A. Nature of the Action

This is an action brought pursuant to 42 U.S.C. § 1983 by Plaintiff Joseph Flores ("Plaintiff" or "Flores"), a prisoner confined at the Adult Correctional Institutions in Cranston, Rhode Island, for alleged deprivation of rights secured by the Constitution of the United States. <u>See</u> Amended Complaint (Dkt. #11) at 1-2.[4] In particular, Flores cites the Eighth Amendment

---

advances the deadline for Flores to make his expert witness disclosures from October 31, 2011, to February 1, 2012. <u>See</u> <u>id.</u>

[3] The facts are taken from Plaintiff's Amended Complaint (Dkt. #11) which for purposes of determining the instant Motion are assumed to be true.

[4] Flores's *pro se* Amended Complaint consists of thirty-three pages plus multiple attachments. However, his page numbering is confusing as Claims II and III each begin with page 1. Similarly problematic, he has

which prohibits cruel and unusual punishment.  <u>See</u> Amended Complaint at 8, 11.  He seeks compensatory damages, declaratory relief, injunctive relief, and a temporary restraining order.  <u>See</u> <u>id.</u> at 2, 32.  His Amended Complaint is prolix, but Flores appears to have two primary complaints.[5]  First, he alleges that correctional officers, including a captain and a lieutenant, have spread rumors that he is a homosexual and a "snitch," <u>id.</u> at 4, from New Mexico and that these rumors have placed him in danger

---

designated multiple documents as "Exhibit A-1".  Therefore, for clarity, the Court has renumbered the pages of the Amended Complaint and has numbered the attachments.  An index of the renumbered pages of the Amended Complaint and the attachments appears below:

Pages

```
1-3      Jurisdiction, Venue, and Parties
4-12     Claim I
13-17    Claim II
18                Exhibit A
19-20             Letter from Flores to DiNitto of 2/27/11
21                Letter from DiNitto to Flores of 2/10/11
22                Last page of Claim II
23-26    Claim III
27       Prayer for Relief
28-32    Motion for Preliminary Injunction and T.R.O.
33       Verification and Certificate of Service
```

Attachments

```
1        Letter from Flores to Martin, M.J., of 3/21/11
2        Letter from Flores to Williams of 11/12/10
3        Declaration of Julio A. Vasquez
4        Letter from Flores to Martin, M.J. (undated)
5        Letter from Flores to Jackson (undated)
```

[5] Although the Amended Complaint contains headings, "Claim I," "Claim II," and "Claim III," Amended Complaint at 4, 13, 23, the allegations overlap, and the Court is unable to identify distinct claims or causes of action which correspond to these headings.  Claim II consists almost entirely of allegations pertaining to Inspector Steven Cabral ("Cabral"), <u>id.</u> at 13-22, but he is not a Defendant in this action.

3

from other inmates and resulted in his being assaulted, id.[6] Second, he alleges that at 9:00 p.m. on September 30, 2010, Lieutenant Oden ("Lt. Oden" or "Oden") came to his cell, ordered him to stand close to the door, and reached in and touched Flores's penis and groin area. Id. at 6-7.

The Court has already determined that Defendants Ashbel T. Wall ("Director Wall" or "Wall"), Nancy Bailey, James Weeden, and Officer Hetu should be dismissed from this action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) because the Amended Complaint fails to state a claim against them upon which relief can be granted. See Report and Recommendation (Dkt. #41) of 8/31/12 ("R & R of 8/31/12") at 41. The Court has additionally determined that the Amended Complaint fails to state a claim upon which relief can be granted as to all claims against:

(1) Jeffrey Aceto ("Captain Aceto" or "Aceto") except the one based on his alleged failure to provide assistance with respect to Flores's complaint in September 2010 that Officer Midwood ("Midwood") and Officer Montecalvo ("Montecalvo") were spreading rumors that Flores was a homosexual and a snitch;

---

[6] The Court reads Flores's *pro se* pleading generously with respect to his claim that he has been assaulted as a result of the rumors. The only reference to an assault appears on page 14 of the Amended Complaint, and it appears in the course of Flores's description of an interview which he had with Cabral on March 3, 2011. See Amended Complaint at 13-14. During the interview, Flores told Cabral about being "backhanded" by a person called "Trap" who allegedly stated: "So man I've been told you['re] a faggot and a bitch of a snitch here from New Mex[ico] not able to walk the line out there." Id. at 14.

(2) Lt. Oden except the one based on his alleged touching of Flores's penis and groin on September 30, 2010;

(3) Midwood and Montecalvo except the one based on Flores's allegation that they spread rumors that he was a homosexual and a snitch. R & R of 8/31/12 at 41-42. The Court, therefore, states only the facts necessary for the claims that it has determined should not be dismissed.

**B. Surviving Claims[7]**

**1. Captain Aceto**

Flores alleges that in September 2010 he told Captain Aceto that he had been confronted physically and threatened by other inmates as a result of rumors which Midwood and Montecalvo had spread. See Amended Complaint at 4-5. According to Flores, Aceto rebuffed his request for assistance by responding with vulgarities, insults, and veiled threats. Id. at 5.

**2. Lt. Oden**

Flores claims that at 9:00 p.m. on September 30, 2010, Oden came to his cell, ordered him to stand close to the door, and reached in and touched Flores's penis and groin area. Id. at 6-7. Prior to this incident, Flores alleges that Oden made statements of a sexual nature to him. Id. at 4. While the words spoken by Oden are not in themselves actionable under Section 1983, see R & R of

---

[7] By "Surviving Claims" the Court means those claims for which dismissal has not been recommended. See Report and Recommendation of 8/31/12 ("R & R of 8/31/12") at 41-42.

5

8/31/12 at 33-34, they tend to support Flores's implicit contention that the touching had no valid penological purpose and instead was for the purpose of sexual gratification or harassment.

### 3. Officers Midwood and Montecalvo

As already noted, Flores alleges that Midwood and Montecalvo spread rumors to other inmates that he was a homosexual and a "snitch." Amended Complaint at 4, 8, 10. He further alleges that "a willing witness," id. at 22, approached him regarding the rumors being spread by Midwood and Montecalvo, id.

## II. *Pro Se* Status

Plaintiff is proceeding *pro se*, and his Amended Complaint is held to a less stringent standard than one drafted by a lawyer. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972). It is to be "read ... with an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991); see also United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002)("[C]ourts should read pro se complaints less strictly than lawyer-drafted pleadings"). The Court is required to liberally construe a *pro se* complaint. See Strahan v. Coxe, 127 F.3d 155, 158 n.1 (1st Cir. 1997); Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993). At the same time, a plaintiff's *pro se* status does not excuse him from complying with procedural rules. See Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 24 n.4 (1st Cir. 2000).

The First Circuit summarized the above law in Dutil v. Murphy,

550 F.3d 154 (1st Cir. 2008).  "[A]s a general rule, we are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Id. at 158 (citing Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)(citing Haines, 404 U.S. at 520; Instituto de Educacion Universal Corp., 209 F.3d at 23)).

**III.  Travel**

Flores's Motions for Injunction were received respectively on January 12, March 26, and May 25, 2012.  Objections to the Motions were filed on January 24, April 4, 2012, and June 12, 2012.  See Defendants' Objection to Plaintiff's Motion for a Permanent Injunction and Motion to Extend Deadline (Dkt. #25); Defendants' Objection to Plaintiff's Motion for an Injunction (Dkt. #36); Defendants' Objection to the Plaintiff's Motion for an Injunction (Dkt. #40).  Telephonic hearings on the First Motion and the Second Motion were held April 20 and 30, 2012.  The Court determined that the Third Motion did not require a hearing.

**IV.  Standard for Injunctive Relief**

Flores, as the moving party, has the burden of persuasion to demonstrate by a clear showing: (1) that he has a substantial likelihood of success on the merits; (2) that he faces a

7

significant risk of irreparable harm if the injunction is denied; (3) that the harm he will suffer outweighs any harm to Defendants if the injunction is granted; and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest.  McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001); see also Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997)(requiring preliminary injunction movant to carry the burden of persuasion "*by a clear showing*").  Of the four factors, the likelihood of success on the merits is of primary importance. See Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006)("The sine qua non of this four-part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."); see also Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005).

**V.   Relief Sought**

   **A.   First Motion for Injunction**

By the First Motion, Flores seeks, in addition to an extension of pretrial deadlines by three months and one day,[8] an order requiring, among other things, Defendants to (1) transfer him to California; (2) return all confiscated legal materials; (3) provide copies of his hospital records from October 15, 2010; (4) refrain

---

[8] See n.2.

8

from placing him in general population; (5) cease intimidating him by threatening to place him in segregation if he continues this lawsuit; (6) assure his safety; and (7) return all confiscated personal property. See First Motion for Injunction, Att. 1 (Proposed Permanent Injunction[9]) at 2-3.

### B. Second Motion for Injunction

Some of the relief sought in the Second Motion (and also in the Third Motion) echos that sought in the First Motion.  In the Second Motion, Flores seeks to enjoin Defendants from: (1) confiscating legal materials pertaining to this case; (2) placing him in segregation and ignoring his request slips for access to his legal materials; and (3) leaving his cell in disarray and breaking his personal property during searches.  See Second Motion for Injunction at 2.[10]  Flores additionally seeks an order which transfers him "out of state back west ...," id., and requires the "return [of] all illegally taken property ...," id. at 3.

### C. Third Motion for Injunction

The Third Motion asks for an order enjoining Defendants from: (1) interfering with his access to the courts and his practice of

---

[9] The Proposed Permanent Injunction actually bears the heading "Motion for a Permanent Injunction." First Motion for Injunction, Att. 1.  The Court has renamed this document as "Proposed Permanent Injunction" to better reflect its actual nature.

[10] Flores uses letters (A, B, C, etc.) to identify the pages of the Second Motion for Injunction. As the Local Rules require that pages be numbered, see DRI LR Cv 5(a)(3), the Court has numbered them and cites to the Second Motion using those numbers.

9

the Muslim religion; (2) placing him in segregation based on false misconduct reports; (3) trying to keep him in Rhode Island instead of being sent back to his home state of California; and (4) harassing or threatening persons who have supplied him with affidavits to substantiate his complaint. See Third Motion for Injunction at 2-4.[11] The Third Motion additionally seeks the return of all confiscated legal materials and personal property and compensation for all damaged and stolen property. Id. at 3.

**VI. Relief Unrelated to Claims Pled in Amended Complaint**

As an initial matter, to the extent that Flores seeks an order enjoining Defendants from interfering with his access to the courts and his practice of the Muslim religion, see id. at 2, such relief is not reasonably related to the claims alleged in the Amended Complaint and is improper. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994)("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); Grindling v. Hawaii, Civ. No. 09-00536 JMS/BMK, 2009 WL 3923166, at *2 (D. Haw. Nov. 18, 2009) ("Plaintiff must seek injunctive relief related to the merits of the claims set forth in his complaint."). Because Flores did not mention his Muslim religion or access to the court in the Amended Complaint, the Court has no jurisdiction to grant this relief. See Stewart v. U.S.

---

[11] See n.10.

Immigration & Naturalization Serv., 762 F.2d 193, 198-99 (2nd Cir. 1985)(finding that the court did not have jurisdiction over a plaintiff's motion for preliminary injunction where the injunctive relief was not reasonably related to the claims contained in the complaint). Accordingly, to the extent that Flores seeks any relief with respect to claims not alleged in the Amended Complaint, the Motions should be denied. I so recommend.

## VII. Application of Standard

### A. Likelihood of Success

Turning now to the claims alleged in the Amended Complaint which this Magistrate Judge has determined should not be dismissed, see R & R of 8/31/12 at 41-42, there appears to be no evidence which supports Flores's allegations against Aceto and Oden other than Flores's own testimony. As a convicted felon serving a lengthy prison sentence, his credibility is certainly subject to attack by Defendants on this basis.

In addition, this Magistrate Judge, in the course of denying on May 9, 2011, Flores's motion for appointment of counsel, noted that there was reason for caution before assuming that Flores's claims had merit. See Order Denying Motion to Appoint Counsel (Dkt. #14) ("Order of 5/9/11"). Flores had recently sent this Magistrate Judge a letter stating that he was in "severe danger of physical assault and death," id. at 2, and requesting that the Court "initiate both injunction and T.R.O. for [his] protection,"

11

id. As Defendants had not yet been served, the request was procedurally improper. Id. However, the Court directed Chief Deputy Clerk Paulette Dube ("Dube") to send a copy of Flores's letter to Director Wall with a cover letter stating that this Magistrate Judge deemed it "advisable" that Wall be made aware of Flores's claim that he was in a "dangerous situation." Id. (quoting letter from Dube to Wall of 4/15/11). Director Wall responded in an April 19, 2011, letter, and advised that "Mr. Flores'[s] stated concerns for his safety are fabricated." Id. at 2-3 (quoting letter from Wall to Dube of 4/19/11).

>Director Wall also wrote in part that:
>
>Mr. Flores received a disciplinary report yesterday for sending a note to another inmate, instructing him to write an anonymous letter to Maximum Security officials claiming Mr. Flores'[s] safety will be in jeopardy when he is released from segregation. Following our normal disciplinary process, he will be seen by a facility Hearing Officer, and he may request that the Warden review the Hearing Officer's findings.
>
>For your information, Mr. Flores'[s] disciplinary history also includes copying court judgments and modifying them by cutting and pasting signatures of court officials and attorneys. In addition, he took letterhead from a New Mexico attorney and submitted letters to the court on his behalf without her knowledge.
>
>Of course, all inmates' claims of personal safety being at risk are fully investigated in a timely manner—-even Mr. Flores['s.] Be advised, however, that this is a manipulative and dishonest inmate.

Order of 5/9/11 at 3 (quoting letter from Wall to Dube of 4/19/11). If, as Director Wall wrote, Flores took letterhead from a New Mexico attorney and submitted letters to the court on his behalf

12

without her knowledge, such action will severely undermine Flores's credibility.

Furthermore, in the case of Oden, Flores has made inconsistent statements relative to when the alleged incident took place, and this casts further doubt on his credibility. In the Amended Complaint, Flores alleges that the incident took place on September 30, 2010. See Amended Complaint at 6. However, at his March 2, 2012, deposition, Flores said that he was positive that it had happened on September 29th, see Deposition Transcript ("Tr.") at 35, and that he had been in error when he wrote in an October 12, 2010, statement given to Warden Auger that the incident happened on September 24, 2010, see id. at 33-35.[12]

Relative to his claims against Midwood and Montecalvo, although Flores claims in the Amended Complaint that he has at least one witness who will support this claim, see Amended Complaint at 22, the actual testimony of that witness is unknown. Even if the witness testifies that these two correctional officers made the statements Flores alleges, inmates are not disinterested parties and have an obvious bias with respect to correctional officers.

---

[12] Flores has filed a motion seeking to prevent the deposition from being used against him at trial. See Plaintiff[']s Motion for the Complete Dismissal, Disqualification of Deposition of Plaintiff (Dkt. #32). However, even if that motion is granted, Defendants will still be able to use Flores's October 12, 2010, statement to Warden Auger in which he stated that the incident involving Oden occurred on September 24, 2010.

In sum, the Court is unable to find that Flores has shown a probability of success on his claims against any Defendant.

**B.   Irreparable Harm**

Labeling an inmate as a snitch has the potential for great harm. See R & R of 8/31/12 at 32-33. However, the only allegation in the Amended Complaint that Flores has actually suffered any physical harm as a result of the alleged rumors and Captain Aceto's failure to respond to Flores's request for assistance relative to those rumors is that while Flores was in segregation he was "backhanded," Amended Complaint at 14, by an inmate called "Trap," id. Flores does not allege that he was injured as a result of being "backhanded." Id.

The Court, nevertheless, recognizes that the potential for irreparable harms exists. Accordingly, this factor weighs in favor of granting injunctive relief relative to Flores's claim that Midwood and Montecalvo spread rumors about him being a homosexual and a snitch and his claim that Aceto rebuffed his request for assistance, but not relative to Flores's claim that Oden touched his penis and groin. With respect to the latter, Flores does not allege that any physical injury resulted from this touching. Accordingly, as to his claim against Oden, Flores has failed to show that he will suffer irreparable harm if the Motions are not granted.

### C. Balance of the Equities

Flores without question has a strong interest in being free from physical attacks and also from having his genitals touched inappropriately. At the same time, Defendants have a strong interest in not having their authority undermined. While they may have no strong interest in keeping Flores in Rhode Island, his court-ordered transfer to California would undermine their authority and, perhaps, precipitate other lawsuits with similar claims seeking similar transfers. See Buck v. Briley, No. 2001 C 1153, 2001 WL 619523, at *2 (N.D. Ill. May 23, 2001)("Prison management is impacted not only by the relief the court may grant to one prisoner, but by the relief other prisoners will demand as a consequence."); see also Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861 (1979)("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); id. at 548 ("[J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than a reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."); see also Palmigiano v. Garrahy, 443 F.Supp. 956, 978

(D.R.I. 1977)("Federal courts are properly reluctant to interfere with the operation of state prison systems.")(citing, among other cases, Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800 (1974)); cf. Hudson v. Caruso, No. 1:10-cv-58, 2011 WL 1042296, at *9 n.5 (W.D. Mich. Jan. 24, 2011)("Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting."). Accordingly, I find that the equities here are closely balanced, but weigh slightly in favor of Defendants.

### D. Public interest

When a prisoner seeks a preliminary injunction against correctional officials, the public interest takes on particular importance. Buck v. Briley, 2001 WL 619523, at *2; see also Heistand v. Coleman, No. 08-3292-SAC, 2008 WL 5427772, at *6 (D. Kan. Dec. 31, 2008)("[T]here is ... a strong, established public interest in affording great deference to jail officials in managing the day-to-day operations of a jail given the unique nature, needs and concerns in the prison or jail environment.")(internal quotation marks omitted)(citing Turner v. Safley, 482 U.S. 78, 84-85, 107 S.Ct. 2254 (1987)). "The public interest in the safe and orderly management of prisons is great. ... While federal courts must take cognizance of prisoners' valid constitutional claims, federal courts cannot manage prisons, and must give substantial deference to those who do." Buck, 2001 WL 619523, at *2.

Moreover, to the extent that Flores is seeking to require Defendants to take affirmative action, e.g., transferring him to California, he faces a higher burden. See L.L. Bean, Inc. v. Bank of America, 630 F.Supp.2d 83, 89 (D. Me. 2009)("[M]andatory preliminary relief is subject to heightened scrutiny and should not be issued unless the facts and the law clearly favor the moving party.")(alteration in original)(quoting Dahl v. HEM Pharm. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993)); see also Snyder v. Millersville Univ., Civil Action No. 07-1660, 2008 WL 5093140, at *11 (E.D. Pa. Dec. 3, 2008)("Mandatory injunctions, which require defendants to take some affirmative action, are 'looked upon disfavorably and are generally only granted in compelling circumstances.'")(quoting Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F.Supp. 159, 166 (D.N.J. 1988)); Burgos v. Univ. of Cent. Fla. Bd. of Trustees, 283 F.Supp.2d 1268, 1271 (M.D. Fla. 2003)("A mandatory preliminary injunction requiring defendant to take affirmative action is proper only in 'rare instances.'")(quoting Harris v. Wilters, 596 F.2d 678, 680 (5th Cir. 1979)).

I find that the public interest does not favor the granting of the instant Motions as it would tend to undermine the authority of Defendants who are employees of the Rhode Island Department of Corrections ("DOC") and would also unduly interfere with the day-to-day operation of the DOC.

**VIII.  Summary of Factors**

Flores has failed to show a likelihood of success on his claims against any of Defendants.  With respect to irreparable harm, this factor weighs in favor of granting the Motions with respect to claims against Aceto, Midwood, and Montecalvo, but not against Oden.  The amount of that weight, however, is reduced because Flores has not alleged that he has suffered any significant injury as a result of the rumors.  While the equities in this matter are closely balanced, they tip slightly in favor of Defendants.  The public interest, however, weighs strongly in favor of non-interference with the decision of correctional officials regarding how and where Flores should be confined. Weighing all the factors together, the Court finds that Flores has not met his burden, and that the Motions should be denied except to the extent that the First Motion seeks an extension of deadlines.[13]  I so recommend.

**IX.  Conclusion**

For the reasons stated above, I recommend that the Motions be denied except to the extent that the First Motion seeks an extension of pretrial deadlines.[14]  Any objections to this Report

---

[13] As granting Flores's request for an extension of deadlines merely advances them "by three months and one day," Order of 1/17/12 at 2 n.3, and even those extended deadlines have already passed, this portion of the First Motion does not warrant discussion.

[14] See n.2.

18

and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

*/s/ David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
September 5, 2012